**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| DAVID A. HOFFER, | ) CASE NO. 3:20-CV-02871-JRK |
| Plaintiff, | ) JUDGE JAMES R. KNEPP, II |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) CARMEN E. HENDERSON |
| Defendant, | ) **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, David A. Hoffer ("Hoffer" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

**II. Procedural History**

On February 1, 2018, Claimant filed an application for SSI, alleging a disability onset date of October 21, 2016.[1] The applications was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). On July 16, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational

---

[1] Claimant also applied for a period of disability and disability insurance benefits, which he later withdrew. This appeal involves only his application for SSI.

1

expert testified. (ECF No. 12, PageID #:116). On October 30, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 94-109). The ALJ's decision became final on October 29, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 79).

On December 31, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 15, and 16-1). Claimant asserts the following issues on appeal:

> I. The ALJ failed to account for the opinions provided by the state agency psychologists, despite finding their opinions credible.
>
> II. The ALJ's decision should be reversed and remanded because the ALJ did not have the authority to hear and ultimately make a decision in this case.

(ECF No. 13 at 2).

### III. Background[2]

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant, David Aaron Hoffer, is a 42-year-old male who has alleged disability based on both physical and mental impairments. Specifically, he reported that he has been unable to work fulltime since at least his protective filing date due to the following impairments: Charcot-Marie-Tooth disease; nerve damage; joint and foot pain; back pain; depression; and learning disabilities.
>
> […]
>
> Regarding mental health symptoms, the claimant testified that he takes Ativan for anxiety symptoms, but he denied other forms of mental health treatment. He described having anxiety as being anxious, frustrated, and aggravated at times.

---

[2] Because Claimant's issue on the merits pertains only to his mental RFC, only testimony and medical history pertaining to his mental health are included herein.

(ECF No. 12, PageID #: 101-102).

> B. **Relevant Medical Evidence**

The ALJ also summarized Claimant's mental health records and symptoms:

> The record supports the claimant has a history of special education services due to a specific learning disability and received extra assistance with reading, language arts, math, science, and social studies. (1F/4-7). However, it was also noted that the claimant had an average range of intellectual functioning. (Id.).
>
> For treatment of his mental health symptoms of depression and anxiety, the record supports the claimant was prescribed medications by his treating medical physicians, but there is no evidence of specialized mental health treatment reflected by the record. Specifically, the record supports the claimant's primary care physician prescribed the claimant Paxil in February 2018 and he reported in April 2018 that it was doing "wonders" for his symptoms. (4F/6 and 10F/14). Yet, in June 2018, the claimant was prescribed Bupsar due to ongoing anxiety symptoms and he was also started on Cymbalta in July 2018, in part to address his anxiety symptoms. (10F/6-8). However, in February 2019, the claimant reported increasing mood swings and anxiety symptoms and he was started on Ativan for anxiety attack symptoms. (13F/4). On March 12, 2019, the claimant reported his medications were working well and he reported he felt calmer with treatment with Ativan. (Id.). His Ativan was refilled in June 2019 and the claimant testified he has continued treatment with Ativan, but denied other mental health treatment.
>
> The record supports the claimant did participate in a consultative psychological examination, performed by Brian Griffiths, Psy.D., on April 11, 2018. (8F). Dr. Griffiths interviewed, examined, and assessed the claimant. (Id.). He observed the claimant had normal speech, a somewhat depressed mood, a reactive affect, and appeared to be of average intelligence. (Id.). Dr. Griffiths assessed the claimant with unspecified bipolar disorder and related disorders and an unspecified anxiety disorder. (Id.).

(ECF No. 12, PageID #: 105).

> C. **Opinion Evidence Regarding Claimant's Mental Impairments**
>
> > 1. **Consultative Psychological Examination – Brian Griffiths, Psy.D**

3

On April 11, 2018, Dr. Griffiths examined Claimant at the request of the agency. Following the examination, Dr. Griffiths opined that "[a]nxiety and/or mood extremes such as depression may interfere with [Claimant's] ability to keep up with others." (ECF No. 12, PageID #: 774). Dr. Griffiths opined that Claimant's "comments suggested that his temper and impatience may have interfered with his ability to maintain long-term employment" and "that stressful situations cause a corresponding increase in anxiety possibly triggering an occasional panic attack. Moreover, his comments suggested that stressful situations cause mood extremes such as depression along with irritability, agitation, and/or even angry outbursts." (ECF No. 12, PageID #: 775).

The ALJ found Dr. Griffiths' opinion "somewhat persuasive". (ECF No. 12, PageID #: 106).

### 2. State Agency Reviewing Psychologists

State Agency reviewing psychologists reviewed Claimant's medical records initially and on reconsideration. On initial review, Dr. Kathleen Malloy opined that Claimant was moderately limited in the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; to maintain and attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. (ECF No. 12, PageID #:163-164). No other significant limitation was observed. Dr. Malloy further opined that Claimant should be limited to low stress, static work environment to avoid worsening of symptoms, limited to occasional contact that is superficial in nature, and limited to one to three

4

step tasks. (ECF No. 12, PageID #: 164).

On reconsideration, Kristin Haskins, Psy.D., substantially agreed with Dr. Malloy's opined limitations. (ECF No. 12, PageID #: 198-200). Additionally, Dr. Haskins opined "Claimant can work within a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations. The claimant's ability to handle routine stress and pressure in the work place would be reduced, but adequate to handle tasks without strict time limitations or production standards." (ECF No. 12, PageID #: 200).

The ALJ gave these opinions "some weight". (ECF No. 12, PageID #: 106).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: degenerative disc disease thoracic and lumbar spine; Charcot-Marie-Tooth (CMT) disease; learning disability; depression; anxiety; hammer toe bilateral feet; and acquired equinus deformity of the right foot (20 CFR 416.920(c)).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: he can occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, and can occasionally balance, stoop, kneel, and crouch, and crawl. He can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. He can occasionally work outdoors in the weather, in conditions of humidity and wetness, in conditions of extreme heat or cold, and in conditions where vibrations are present. He is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. He is limited to simple work-related decisions. He can respond appropriately to occasional interaction with supervisors and coworkers, with no tandem work with coworkers, and no interaction with the general public. He is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. He is limited

5

to jobs that require no more than occasional reading and spelling. He is limited to a sit
stand option at the workstation each hour to change position for two minutes while remaining on task 90% of the workday.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 1, 2018, the date the application was filed (20 CFR 416.920(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

6

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*.

### C. Discussion

In his first issue, Claimant argues that "the ALJ failed to provide any sort of reasoning explaining how the opinions from the state agency psychologists were accounted for within the residual functional capacity." (ECF No. 13 at 9). Claimant argues that the ALJ failed to provide "traceable reasoning linking these opinions to the adoption of the residual functional capacity"; thus, the RFC is not supported by substantial evidence. (ECF No. 13 at 9). For the reasons set forth below, this Court agrees.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

On initial review, Dr. Malloy opined that Claimant was moderately limited in the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; to maintain and attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism

8

from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. No other significant limitation was observed. (ECF No. 12, PageID #:163-164). Dr. Malloy further opined that Claimant should be limited to low stress, static work environment to avoid worsening of symptoms, limited to occasional contact that is superficial in nature, and limited to one to three step tasks. (ECF No. 12, PageID #:164). On reconsideration, Dr. Haskins substantially agreed with Dr. Malloy's opined limitations including that he be limited to occasional, superficial contact. (ECF No. 12, PageID #: 198-200).

> The ALJ gave these opinions "some weight" and explained:
>
>> These assessments were well supported with citations to the medical record and are generally internally consistent. However, based on later submitted evidence, including the claimant's testimony, and his history of a learning disorder (1F), the undersigned has incorporated slightly different and greater mental limitations, such as limiting the claimant to jobs requiring no more than occasional reading and spelling and to simple, routine and repetitive tasks with only simple work-related decision.

(ECF No. 12, PageID #: 106). Claimant argues that despite the ALJ's assertion that she incorporated greater mental limitations than opined by the state agency reviewing psychologists, the ALJ failed to include or discuss the opinions that Claimant "should be limited to occasional contact with coworkers and supervisors that is superficial in nature." (ECF No. 13 at 11). Claimant argues that the ALJ erred when she failed to address the quality of the interaction that Claimant was allowed to have with his supervisors and provided no logical bridge to explain why these opinions were left out. (ECF No. 13 at 13). The Commissioner argues that the decision "generally applied the social limitation" that Claimant disputes. (ECF No. 15 at 7).

The ALJ's decision discussed the supportability of the state agency reviewing psychologists' opinions finding that were "well supported with citations to the medical record[.]"

9

(ECF No. 12, PageID #: 106). The ALJ also found that the opinions were "internally consistent[.]" (ECF No. 12, PageID #: 106). However, based on later submitted evidence, the ALJ did not find that the opinions adequately limited Claimant. (ECF No. 12, PageID #: 106). Because of this later submitted evidence, the ALJ incorporated greater limitations than those opined by the state agency reviewing psychologists with respect to Claimant's understanding and memory limitations. Specifically, the RFC limited "to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. He is limited to simple work-related decisions" (ECF No. 12, PageID #: 100), while the state agency reviewing psychologists limited Claimant to simple and moderate tasks involving 1-3 steps (ECF No. 12, PageID #: 163, 198). The RFC adopted the adaptive limitations opined by the state agency reviewing psychologists. (*Compare* the RFC finding that Claimant be limited "to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained." (ECF No. 12, PageID #: 100-101), *with* the adaptive limitations set forth by the reviewing psychologists (ECF No. 12, PageID #: 163, 199)). The RFC included an additional limitation that Claimant could perform no jobs that require more than occasional reading and spelling. (ECF No. 12, PageID #: 101).

With respect to Claimant's social interaction limitations, the ALJ incorporated the state agency reviewing psychologists' opinions into the RFC with the exception of the quality of interaction Claimant could have with his supervisors. The RFC limits the quality of Claimant's interaction with public to "no interaction" and with coworkers to "no tandem work". However, the

decision is silent as to the quality of the interaction Claimant can have with his supervisors.[3] It is possible that that the ALJ intended to include "supervisors" in the limitation for "no tandem work with coworkers". It is possible the ALJ did not find the limitation credible and, therefore, purposely left out a superficial limitation with respect to supervisors. It is also possible that the superficial limitation was simply overlooked regarding supervisors. This Court cannot determine the intent of the ALJ, however, without engaging in speculation. Although it may be likely that the ALJ intended the "no tandem work with coworkers" to apply equally to Claimant's supervisors, the ALJ repeatedly distinguished coworkers and supervisors both in the decision (*see* ECF No. 12, PageID #: 100 (RFC limiting Claimant to "occasional interaction with supervisors and coworkers")) and during the administrative hearing (*see* ECF No. 12, PageID #: 143). Had the ALJ limited Claimant to "no tandem work" without specifying "with coworkers" this Court could conceivably conclude that the limitation applied to both coworkers and supervisors. *See Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted*, No. 3:19-CV-1243, 2020 WL 2839654 (N.D. Ohio June 1, 2020) ("[T]he ALJ's limitation to no team or tandem tasks is a qualitative limitation on social

---

[3] Although the decision limits Claimant to "occasional" interaction with his supervisors, this speaks to the quantity of interaction, not the quality of the interaction. *See Perrine v. Berryhill*, No. 1:18-CV-49, 2019 WL 1331597, at *9 (N.D. Ohio Mar. 25, 2019) (citing *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *4–5 (S.D. Ohio Dec. 3, 2018) (footnotes omitted), *report and recommendation adopted*, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019); *see also Mawyer v. Berryhill*, No. 2:16-cv-1140, 2019 WL 1246245, at *8, 2019 U.S. Dist. LEXIS 43707, *21 (D.C. Nev., Feb. 28, 2019) (indicating "where the ALJ concludes that the claimant is functionally limited to 'only brief and superficial interaction with the public and coworkers,' he must adduce testimony from a vocational expert that there are other jobs that the claimant can perform with such a limitation."); *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, *6 (N.D. Ohio, Jun. 8, 2017) ("[T]he VE testified that the limitations to superficial interaction relates to the 'quality of interaction,' and is more a measure of the intensity of the interaction, whereas terms like occasional or frequent relate to the quantity of interaction.")).

interaction and adequately addressed the opinion of Drs. Matyi and Finnerty that Kearns be limited to superficial interaction with others.") (citing *Collins v. Comm'r of Soc. Sec.*, No. 3:17 CV 2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018) ("Contrary to Plaintiff's argument, the ALJ restricted Plaintiff from 'team or tandem tasks' (Tr. 15), which logically require more than superficial interpersonal contact. This is a restriction on the quality of interpersonal contact."), *report and recommendation adopted* by 2019 WL 1409535); *Hines v. Comm'r of Soc. Sec.*, No. 3:20 CV 620, 2021 WL 1571659, at *3 (N.D. Ohio Apr. 22, 2021); *Romo v. Comm'r of Soc. Sec.*, No. 3:20-CV-01557-JGC, 2021 WL 5040385, at *7 (N.D. Ohio July 9, 2021), *report and recommendation adopted*, No. 3:20CV1557, 2021 WL 4437062 (N.D. Ohio Sept. 28, 2021); *but see Hayes v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-193, 2021 WL 5177821, at *2 (S.D. Ohio Nov. 8, 2021) (remanding after finding that the RFC did not address the medical opinions' superficial interaction limitations even though the RFC limited claimant to "no jobs requiring teamwork or tandem tasks"). Moreover, the ALJ's decision to limit Claimant's interaction with coworkers does not necessarily limit the quality of interaction Claimant could have with his supervisors. *See Francis v. Comm'r of Soc. Sec.*, No. 2:17-CV-1022, 2018 WL 4442596, at *6 (S.D. Ohio Sept. 18, 2018), *report and recommendation adopted*, No. 2:17-CV-1022, 2018 WL 4932081 (S.D. Ohio Oct. 11, 2018) (RFC that limited claimant to "superficial contact with coworkers and only occasional interaction with supervisors" is a superficial interaction limitation only with respect to coworkers, not supervisors).

Although the ALJ gave the opinions only "some weight", her reason for doing so was that their limitations were not severe enough.[4] Otherwise, the ALJ found that the opinions were

---

[4] The Court notes that the ALJ used outdated terminology when analyzing these opinions by giving them "some weight". Nonetheless, where an ALJ gives "some weight" to an opinion and

12

supported and consistent with the evidence. With regard to the social limitations opined by the state agency reviewing psychologists, the ALJ incorporated or explained each of the limitations except for the limitation regarding the quality of the interaction Claimant could have with his supervisors. This Court recognizes that the ALJ need not address all limitations; however, where the RFC does not include the limitation, the ALJ must explain why the limitation was not included. *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio, Mar. 25, 2019) ("Although an ALJ is not required to discuss every piece of evidence in the record to support her decision, an ALJ must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC."). This Court agrees with Claimant that the ALJ failed to build a logical bridge when she adopted, or increased the severity of, the limitations of the reviewing psychologists apart from the superficial limitation as applied to supervisors and failed to explain the reason for not including this limitation. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (An ALJ's decision must be remanded "[e]ven if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'") (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir.2004)). Instead, this Court is left to speculate as to whether the ALJ intended to include the limitation but merely overlooked it or whether she did not find such limitation credible. *See Perrine*, 2019 WL 1331597, at *7.

Remand in this instance is not merely a formality. Should the ALJ adopt the remainder of the social limitations opined by the reviewing psychologists, it could potentially change the

---

adopts limitations from that opinion into the RFC, it logically follows that the ALJ found that opinion to be at least somewhat persuasive.

13

disability determination. The ALJ did not pose a hypothetical to the vocational expert that included this limitation. Although the ALJ need only incorporate those limitations accepted as credible into the hypothetical questions, *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d at 1235 (6th Cir. 1993)), the ALJ's decision does not explain why the superficial interaction with supervisors restriction was omitted. Consequently, the Court cannot determine whether the ALJ's hypothetical adequately incorporated all of Claimant's limitations. Accordingly, remand is necessary.

Because this Court recommends remand on the merits, it need not address the constitutional issue raised in Claimant's second issue. *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 571 n.5 (6th Cir. 2020) ("As the Supreme Court has stated, '[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not pass on questions of constitutionality ... unless such adjudication is unavoidable.'" (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)); (citing *Matal v. Tam*, ––– U.S. ––––, 137 S. Ct. 1744, 1755, 198 L.Ed.2d 366 (2017); *Clinton v. Jones*, 520 U.S. 681, 690, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("[W]e have often stressed the importance of avoiding the premature adjudication of constitutional questions."); *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."); *Torres v. Precision Indus., Inc.*, 938 F.3d 752, 754 (6th Cir. 2019) ("[Federal courts will not] decide questions of a constitutional nature unless absolutely necessary to a decision of the case or formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." (internal quotation marks omitted))).

## VI. Recommendation

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

Dated: February 11, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).